## Angiolillo v. Amalgamated Clothing Workers of America et al.

*H. B. Beitler*, for plaintiff.
*Kraus & Weyl*, for defendants.

PARRY, J., June 24, 1935.—This is a bill in equity to recover damages from the defendants, an unincorporated association and its officers, for alleged unlawful interference with the plaintiff's right to earn a livelihood. From the bill and amended bill, the answer and proofs the court makes the following:

### Findings of fact

1. The plaintiff, a tailor by trade for upwards of 15 years, was for 6 years prior to September 15, 1932, employed at his trade by Pincus Brothers, Inc., in Philadelphia.

2. The defendant, the Amalgamated Clothing Workers of America, is an unincorporated association of persons engaged in the tailoring trade in the United States, having a local branch in the City of Philadelphia, of which the plaintiff was a member on September 15, 1932.

3. Prior to September 15, 1932, the plaintiff had repeatedly protested in a proper and orderly manner to the officials of the association against certain features of the administration of the association and certain alleged acts of the officials.

4. On September 15, 1932, the plaintiff's employment with Pincus Brothers, Inc., terminated.

5. After September 15, 1932, the plaintiff ceased to pay dues to the defendant association and therefore ceased to be a member thereof in good standing.

6. The defendant association has agreements with almost all manufacturers of men's clothing in Philadelphia wherein the manufacturers agree to employ only members of the defendant association, provided however, that if the association is unable to supply labor to the manufacturers within 24 hours after request the latter are at liberty to employ workers in the open market.

7. In consequence of these agreements and of the fact that he ceased to be a member of the defendant association the plaintiff has been unable to secure regular employment or retain casual employment at his trade since September 15, 1932.

8. The plaintiff has made no effort to be reinstated as a member of the association.

9. The plaintiff did not comply with the bylaws of the association concerning settlement of disputes between members and the association before bringing suit.

10. The reason for the plaintiff's failure so to submit his complaint or apply for reinstatement directly to the officials of the association was due to fear of violence should he go to the headquarters of the association, based on his belief that others who had personally presented their grievances had met with violence.

### Discussion

The plaintiff alleges that he was discharged from Pincus Brothers and that this was not because of any misconduct or inefficiency on his part but because the officials of the defendant association demanded that the Pincus shop dismiss him and threatened strikes and violence if it did not.

To attempt to prove this allegation he testified to a conversation he overheard between Tony Parris, the business agent of the association in charge of the Pincus shop, and other persons, as well as to the statements made

by the foreman of the shop when discharging him. This testimony was admitted over the defendant's objection and the decision upon its relevancy was reserved for later consideration.

The plaintiff contends the evidence as to the foreman's statements is admissible as part of the res gestæ and cites Bausbach v. Reiff, 244 Pa. 559. In that case the action was against the plaintiff's coworkers in a factory for conspiracy to obtain his discharge. The plaintiff offered in evidence a paper which all the defendants admitted having signed and presented to the manager of the brewery. It was to the effect that the signers refused to work at the company plant so long as the plaintiff continued to be employed there. Thus the defendants' effort to procure the plaintiff's discharge was proved by their own admission. The question of evidence arose during the plaintiff's attempt to prove that it was because of the threat in the paper that he was discharged. In this connection he offered a letter of recommendation given by the official of the plant who discharged him stating that the plaintiff had been discharged through no fault of his own but at the demand of his fellow employes. The letter was identified on the stand by the writer.

The judge after admitting the letter directed that it be stricken from the record and instructed the jury to disregard it. On appeal the Supreme Court held that it should have been admitted as part of the res gestæ saying:

"The letter of recommendation was admissible in evidence, at least for the purpose of showing the fact of plaintiff's discharge, and showing that the only reason for it as stated by his employer, was the demand and the threat made by defendants."

The fact the letter was admitted to prove was that the threat was the cause of the discharge. It was not admitted as proof of the making of the threat. But that is just what the plaintiff here seeks to establish by testify-

ing to his employer's remarks when discharging him for there is no other evidence of the making of demands or threats by the defendants. I cannot extend the rule in the manner contended for. In fact, I think it strains the rule to say that the declarations of an employer when discharging an employe are admissible as part of the res gestæ to show that an otherwise established fact is the reason for the discharge, for there is nothing spontaneous about such declarations and some experience of the world will suggest that they are often the merest excuses without any real foundation in fact.

I am constrained therefore to sustain the defendants' objection and strike out the testimony. Without it the record is devoid of evidence that the plaintiff's discharge was in any way procured by the defendants. On the contrary, Joseph Perna, who is alleged to have given the explanation offered, denied that he had done so and testified that the plaintiff had been several times discharged for incompetence but reinstated at the request of the business agent of the association. At the time complained of, he said he was not discharged but left of his own volition. The plaintiff did testify that he overheard Tony Parris, a defendant and official of the union, say to Perna that "they are going to fire me and all the rest of the fellows that complained". This was not a threat or demand and may as well refer to "firing" from the union as from the shop.

Finally there is no proof that the defendants have prevented the plaintiff from obtaining employment since he left Pincus Brothers. After he stopped paying dues he ceased to be a member of the union and his name is not presented to manufacturers who need workers. He has made no effort to be reinstated in the union. His explanation is that he was afraid to go to union headquarters for fear of violence. However the testimony as to the experiences of others who had been in difficulties with the union and had gone to headquarters was either en-

tirely hearsay or failed to establish that the violence was committed by any of the defendants or by their orders.

It is difficult to escape the conclusion that this association or its minions did and perhaps still exercise a mischievous and unwarranted influence in the affairs of certain industrial establishments, but the fact remains that this record does not contain sufficient competent evidence to sustain the averments of the bill and I am therefore driven to the following:

### Conclusions of law

1. There is no competent evidence that the termination of the plaintiff's employment with Pincus Brothers was procured by the defendants or any of them.

2. There is no competent evidence that the defendants or any of them have wrongfully prevented the plaintiff from obtaining employment since September 15, 1932.

3. The bill must be dismissed.

### Decree nisi

And now, June 24, 1935, it is ordered, adjudged and decreed as follows:

1. That the bill be dismissed.

2. That the plaintiff pay the costs of these proceedings.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys and unless exceptions are made thereto within ten days either party may present a form of final decree to be filed in the case.